UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MICHAEL D. SHEA,
*Petitioner*,

v.                                          1:22-cv-198-MSN-IDD

HAROLD CLARK,
*Respondent*.

MEMORANDUM OPINION

Michael D. Shea, a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas

corpus under 28 U.S.C. § 2254 challenging the validity of his March 18, 2019, convictions in the

Circuit Court of Spotsylvania County, Virginia (hereinafter "Circuit Court"). [Dkt. No. 1].[1] On

June 3, 2022, Respondent filed a Rule 5 answer and a motion to dismiss, with supporting briefs

and exhibits. [Dkt. Nos. 8–10, 15–17]. Petitioner exercised his right to file responsive materials to

the motion to dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local

Rule 7(K). [Dkt. Nos. 12, 13]. Because the parties have fully briefed the issues presented and oral

argument would not aid the decisional process, this matter is now ripe for disposition. For the

reasons that follow, Respondent's motion to dismiss must be granted and the petition must be

dismissed with prejudice.

---

[1] Shea also filed a Motion for Appointment of Counsel. [Dkt. No. 7]. A petitioner seeking habeas corpus relief in the
federal courts has no right to counsel. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991); *Pennsylvania v. Finley*, 481
U.S. 551, 555 (1987). Although the Court has discretion to appoint counsel if it "determines that the interests of justice
so require," 18 U.S.C. § 3006A(a)(2)(B), counsel should only be appointed under "exceptional circumstances."
*Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Shea has presented no such exceptional circumstances.
Moreover, appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting
discovery or an evidentiary hearing. *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a),
8(c). The claims before the Court do not require discovery and concern historical matters based upon the record that
do not require a hearing. Accordingly, the motion for appointment of counsel will be denied.

## I.       Procedural Background

Shea is detained pursuant to final judgment orders entered by the Circuit Court of Spotsylvania County dated March 28, 2019. On June 18, 2018, Shea was indicted for ten felonies: two counts of possession with intent to distribute child pornography in violation of Virginia Code § 18.2–374.1:1(C); one count of possession of child pornography of a child less than eighteen years of age in violation of Virginia Code § 18.2–374.1:1; and seven counts of possession of child pornography of a child less than eighteen years of age, second offense, in violation of Virginia Code § 18.2–374.1:1. (Circuit Court Nos. CR18–938 through –947). (R. at 231). On July 27, 2018, Shea was arraigned and entered pleas of not guilty to each offense, and his case was set for a jury trial on October 18, 2018. (R. at 237–38).[2] On October 11, 2018, the prosecutor advised the Circuit Court, via a notice filed with the clerk, that it would present a plea agreement to the Circuit Court on October 16, 2018. (R. at 208).

On October 16, 2018, Shea, his attorney, and the prosecutor each signed a plea agreement. (R. at 254–61). The agreement required Shea to plead guilty to six of the ten felonies (two counts of possession with intent to distribute child pornography, and four counts of possession of child pornography, second or subsequent offense), and the remaining four felonies would be dismissed by the entry of a *nolle prosequi*. The plea agreement set forth the range of punishment for each indictment to which Shea would plead guilty: in Case No. CR18–938, possession of child pornography with intent to distribute, he could be sentenced to not less than five years and no more than twenty years in prison; in Case No. CR18–939, possession of child pornography with intent to distribute, he could be sentenced to not less than five years and no more than twenty years in

---

[2] The record establishes that Shea was previously convicted of possession of child pornography in the Circuit Court of Fairfax County on May 26, 2010. (R. at 240–49).

prison, and the five-year mandatory minimum had to be served consecutively;[3] in Case Nos. CR18–941 through –944, the four counts of possession of child pornography of a child less than eighteen years of age (second or subsequent offense), he could be sentenced on each count to not less than one year and no more than ten years in prison, or, in the discretion of a judge or jury, up to twelve months in jail and a fine of up to $2500. (R. at 254–55). There was no agreement as to the sentence that would be imposed, Shea would not be eligible for alternative sentencing programs, and each sentence imposed would run consecutive to any other sentence. Shea faced a maximum sentence of eighty years in prison, with a mandatory minimum of five years. (R. at 484).

The plea agreement contained the following summary of the evidence the prosecutor expected to present if the case had gone to trial:

> Special Agent Cook (SA Cook) of the Virginia State Police began an online investigation on a Spotsylvania residence beginning February 9, 2018 by making connections to a computer at IP Address 72.73.27.144 which was identified as having files of interest in child exploitation investigations. On February 15, 2018, the same IP address was found to be sharing a file of interest on the eMule/eDonkey. On that same date, SA Cook was able to download a file from that computer IP which was titled "Daniel_14yo German boy compilation from older Friend very cute and much filined.mp4" and identified by a particular hash. The file depicted an under aged male with no pubic hair masturbating himself as well as being masturbated by another individual. During the investigative period on or about March 8, 2018, SA Cook's computer also connected and downloaded from a separate IP address at the same residence. This download also contained a file of interest. On that same date SA Cook successfully downloaded the following file from that IP address: "younow_snapshat_vine_omegle- kik_clips774.mp4" with a particular hash. The video depicted a prepubescent female with no pubic hair and no breast development exposing her vagina on a webcam. SA Cook obtained administrative subpoenas for the two IP addresses. They were issued to a residence that the defendant resided [at] in Spotsylvania, Virginia. The search also indicated that the occupant of the home Michael Shea (defendant) was on the

---

[3] On October 16, 2018, Indictment No. CR18–939 was amended to allege that Shea had "previously committed a violation of § 18.2–374.1:1(C)" and that five years of his sentence was a mandatory minimum and had to be served consecutively. (R. at 263, 456).

Virginia Sex Offender Registry for a prior conviction of possession of child pornography in Fairfax, Virginia.

On April 19, 2018 a search warrant was executed at the residence. The Virginia State Police Tactical Team secured the residence and processed electronic devices from inside the residence and conducted interviews. SA Cook and SA Falkner spoke with the defendant. The defendant was provided his rights pursuant to *Miranda* and he acknowledged that he understood. The defendant stated that all items that the investigators were looking for were located in his bedroom on his laptop. He stated that no one else inside the residence had any knowledge of child exploitative material in the house. He stated the laptop was password protected and no one else installed any software on his laptop other than himself. He stated that he used the Shareaza peer-to-peer file sharing network to obtain videos and images from the internet. He stated he was the sole person responsible for any content on the electronic devices found inside the residence. The defendant indicated that his prior conviction happened in 2010, where an investigator in Florida downloaded child exploitative material from him in Fairfax, Virginia. He stated he was using a peer-to-peer file sharing software. He stated he understood how peer-to-peer file sharing works. When asked if he understood he had made his files available for other users to use he stated he did not try to share them but understood how the software worked to obtain files. The files that SA Cook obtained during the investigative period were obtained from the Shareaza peer-to-peer file sharing network. SA Cook would testify that the defendant was number two in the state of Virginia for content and volume of sharing during the three-month investigative period.

Within the defendant's bedroom, the task force discovered multiple files of investigative interest on an external drive under the foot of the defendant's bed. 10 files were extracted that depicted images or videos of child exploitative material reviewed by SA Cook. There was a mobile device in the defendant's room that contained at least two videos that were captured of exploitative material. The defendant admitted to capturing the videos on his phone.

(R. at 257–58). The Circuit Court accepted the pleas to Case Nos. CR18–938, 939, and –941–through –944, and continued the matter to January 14, 2019. (R. at 266–68). On defense counsel's motion, the sentencing was continued to March 5, 2018. (R. at 311).

The Circuit Court initially sentenced Shea to a total of fifty years in prison with twenty years suspended. (R. at 368). By order dated March 28, 2019, the Circuit Court modified the

sentences imposed and sentenced Shea to a total of forty years in prison with twenty years suspended.[4] (R. at 369). After his counsel filed a notice of appeal, Shea, proceeding *pro se*, filed a motion in the Circuit Court requesting a new hearing and new counsel, asserting his present counsel had a conflict of interest and had denied him his Sixth Amendment right to effective assistance of counsel. (R. at 360–64). The Circuit Court denied the motion by order dated April 2, 2019. (R. at 370). Shea, proceeding *pro se*, filed a second motion for new counsel (R. at 378–80), and his trial counsel filed a motion to withdraw, stating the Virginia State Bar had advised that he had a conflict of interest and should withdraw. (R. at 383–84). The Circuit Court granted the motion to withdraw by order dated June 11, 2019, and new counsel was appointed to represent him on appeal. (R. at 388).[5]

On December 20, 2019, the Court of Appeals of Virginia granted appellate counsel's motion to withdraw and denied the petition for appeal. (No. 0502–19-2). The petition alleged the trial court erred by imposing a lengthy period of incarceration without considering the rehabilitative function of sentencing. (R. at 423–24). Shea did not appeal to the Supreme Court of Virginia. [Dkt. No. 1 at 2, ⁋ 9(g)].

On December 3, 2020, Shea filed a petition for writ of habeas corpus in the Supreme Court of Virginia, seeking the opportunity to "re-negotiate his plea agreement" and "a new sentencing hearing." (R. at 3).[6] He raised the following claims:

---

[4] Shea was sentenced to ten years in prison for Case No. CR18–938, possession of child pornography with intent to distribute; ten years in prison for Case No. CR18–939, possession of child pornography with intent to distribute, five years of which was a mandatory minimum; and five years in prison, with five years suspended, on each of the four counts of possession of child pornography of a child less than eighteen years of age, second or subsequent offense. (R. at 352–54).

[5] Shea sent several letters to the Circuit Court complaining about his new counsel and stated that his counsel had withdrawn from representing him. The clerk advised Shea that the Circuit Court had not been advised that counsel had withdrawn and directed Shea to address his concerns to the Court of Appeals of Virginia. (R. at 409–22).

[6] For purposes of this motion, the Court will use December 3, 2020, as the earliest Shea could have filed his state petition by handing it to a prison employee for mailing because that is when he executed the state habeas petition

1.     Prosecutor knowingly made false statements, and trial counsel was ineffective for failing to object to false statements. (R. at 27–29).

2.     Trial counsel was ineffective for failing to keep open and complete communication. (R. at 30–31).

3.     Trial counsel was ineffective for failing to investigate. (R. at 31–32).

4.     Trial counsel was ineffective for not properly communicating plea offer. (R. at 32–33).

5.     Trial counsel was ineffective for not negotiating a plea agreement. (R. at 33–34).

6.     Trial counsel was ineffective for coercing petitioner to accept plea. (R. at 34–35).

7.     Trial counsel pressured petitioner to sign a plea in order to cover up his poor representation. (R. at 35–36).

8.     Trial counsel was ineffective for promising a sentence within the guidelines. (R. at 36–37).

9.     Trial counsel was ineffective for failing to offer a complete defense. (R. at 37–38).

10.    Trial counsel was ineffective for failing to hire a forensic expert. (R. at 38–39).

11.    Trial counsel was ineffective for failing to know the scope of the forensic sexual evaluation. (R. at 39–40).

12.    Trial counsel was ineffective for failing to obtain an independent psychosexual evaluation. (R. at 40).

13.    Sentence exceeded guidelines. (R. at 40–41).

The petition sought a "new sentencing hearing" and an order that the Circuit Court "sentence Petitioner within the guidelines as was represented to Mr. Shea at the time he signed the plea." (R. at 43). By order entered August 17, 2021, the Supreme Court of Virginia dismissed the state habeas petition. (R. at 650–57). The petition for rehearing was denied on November 24, 2021, because it was not timely filed. (R. at 660).

---

before a notary. (R. at 44). *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Shea, however, attached an exhibit to his petition that indicates he did not mail his state habeas petition to the Supreme Court of Virginia until December 11, 2020. [Dkt. No. 1-2 at 32].

On February 8, 2022, petitioner executed his current federal habeas petition, in which he raises the following grounds for relief:

1.  "Prosecutor knowingly made false statements." [Dkt. No. 1 at 9].

2.  "Trial counsel was ineffective for not providing open and complete communication." [*Id.* at 9].

3.  "Trial Counsel was ineffective for failure to investigate." [*Id.* at 10].

4.  "Trial counsel was ineffective for not properly communicating plea offer." [*Id.* at 10].

5.  "Trial counsel was ineffective for not negotiating a plea agreement." [*Id.* at 11].

6.  "Trial counsel was ineffective for coercing petitioner to sign [a] plea." [*Id.* at 11].

7.  "Trial counsel pressured petitioner to sign plea to cover up his poor preparation." [*Id.* at 12].

8.  "Trial counsel was ineffective for promising a sentence within [the] guidelines." [*Id.* at 12].

9.  "Trial counsel was ineffective for not providing a complete defense." [*Id.* at 12].

10.  "Trial counsel was ineffective for not hiring a forensics expert." [*Id.* at 12].

11.  "Trial counsel was ineffective for not knowing the scope of the [p]sychosexual [e]xamination." [*Id.* at 13].

12.  "Trial counsel did not obtain an independent psychosexual evaluation." [*Id.* at 13].

13.  "Sentence far exceeded guidelines." [*Id.* at 14].

Having extensively reviewed the record, and for the reasons discussed below, the Court finds that Shea's federal petition is time barred by the federal statute of limitations and must be dismissed. *See* 28 U.S.C. § 2244(d). Alternatively, the Court finds that Shea's federal habeas claims are barred from consideration under 28 U.S.C. § 2254, subsections (b) through (d), and must be dismissed.

## II.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires that a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. *See* 28 U.S.C. § 2244(d)(1)(A)–(D). In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

Shea's state court direct appeal proceedings concluded on December 20, 2019, but are deemed final for federal habeas purposes on January 21, 2020, the date his time for filing a petition for appeal in the Supreme Court of Virginia expired.[7] *See Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000) ("AEDPA provides that the one-year period does not commence until the latest of the date when judgment on direct review 'became final' or 'the expiration of the time for seeking such review.'") (quoting 28 U.S.C. § 2244(d)(1)(A)). Shea therefore had until January 21, 2021, to file his federal habeas petition. His petition was not filed until February 8, 2022.

### A.     Statutory Tolling

The one-year federal statute of limitations is tolled during the pendency of properly filed state collateral proceedings. *See* 28 U.S.C. § 2244(d)(2). In this case, the limitations period was tolled on December 3, 2020, when Shea executed his state habeas petition before a notary. (R. at 44). At that time, 317 of the 365 days of the federal one-year statute of limitations had elapsed and

---

[7] The thirty-day period expired on Sunday, January 19, 2020, and Monday, January 20, 2020, was a federal holiday.

he had 48 days remaining in which to file his federal habeas petition after the state habeas proceedings concluded.

The Supreme Court of Virginia dismissed the state habeas petition on August 17, 2021. (R. at 650–57). While Shea did subsequently file a petition for rehearing, it was denied as untimely on November 24, 2021. (R. at 660). The untimely petition for rehearing was thus not "properly filed," and the federal statute of limitations clock resumed after the August 17, 2021, dismissal. *See Pace*, 544 U.S. at 417 ("time limits, no matter their form, are 'filing' conditions"). If the remaining 48 days are added to August 17, 2021, Shea's federal petition was due on or before Monday, October 4, 2021. Shea, however, did not file his federal habeas petition until February 8, 2022, at the earliest, which was another 127 days after the federal statute of limitations period had lapsed. Accordingly, the petition is untimely unless equitable tolling applies.[8]

---

[8] On September 11, 2020, Shea filed a petition for writ of mandamus with the Supreme Court of Virginia, asking for access to the law library. *See* [Dkt. No. 1-2 at 40–42]. The petition was dismissed on June 15, 2021. [*Id.* at 2–3]. The Fourth Circuit has held that a petition for writ of mandamus may toll the federal statute of limitations if it seeks "to challenge the validity of the underlying conviction." *See Harris v. Va. Dep't of Corr.*, 282 F. App'x 239, 242 (4th Cir. 2008) (citing *Walkowiak v. Haines*, 272 F.3d 234, 237 (4th Cir. 2001), *abrogated on other grounds by Wall v. Kholi*, 562 U.S. 545 (2011) ("Generally, the term 'collateral review' refers to a proceeding separate and distinct from that in which the original judgment was rendered, and in which the petitioner challenges the legality of the original judgment.").

Here, however, Shea's state mandamus did not challenge the validity of the underlying convictions, but instead merely sought an order directing the Virginia Department of Corrections to "re-open the law library" at Shea's institution of confinement. [Dkt. No. 1-2 at 42]. Such a mandamus petition does not toll the federal limitations period. *See, e.g.*, *Tate v. Eagleston*, 2012 U.S. Dist. LEXIS 112491, *17–19 (D.S.C. Mar. 26, 2012) (holding mandamus was not "other collateral review" which tolled statute of limitations) (citing *Moore v. Cain*, 298 F.3d 361, 365–67 (5th Cir. 2002) (denying statutory tolling for a writ of mandamus which sought a ruling on a habeas denial rather than review of the underlying criminal judgment); *Branham v. Ignacio*, 83 F. App'x 208, 209 (9th Cir. 2003) (concluding that a mandamus petition seeking to compel document production did not toll the limitations period); *Thomas v. Tucker*, No. 4:10-276, 2011 U.S. Dist. LEXIS 151708, at *4–5 (N.D. Fla. Dec. 7, 2011) (finding that a petition for writ of mandamus that sought only discovery was not an application for collateral review of the underlying criminal judgment); *Tatum v. Sec'y, Dep't of Corr.*, No. 8:10-904, 2011 U.S. Dist. LEXIS 17321, at *13 (M.D. Fla. Feb. 15, 2011) (finding that a mandamus petition that "did not attack the legality of [the petitioner's] conviction or sentence" did not toll the limitations period); *Williams v. Thaler*, No. H-11-0555, 2011 U.S. Dist. LEXIS 66494, at *7–8 (S.D. Tex. June 8, 2011) (denying statutory tolling for a writ of mandamus seeking a ruling on a habeas denial rather than review of the underlying criminal judgment), *adopted by* 2012 U.S. Dist. LEXIS 107853 (D.S.C. Aug. 1, 2012), *appeal dismissed*, 487 F. App'x 814 (4th Cir. 2012); *see also Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001) (filing a motion to obtain documents to aid an investigation does not toll the federal statute of limitations as it did not challenge the conviction).

### B.      Equitable Tolling

The United States Supreme Court has held that a habeas petitioner may be permitted to file a federal habeas petition out of time if he can establish his entitlement to equitable tolling, which requires that the petitioner show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted). A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test, *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 12304, 1307 (11th Cir. 2008)), and generally is obliged to specify the steps he took in diligently pursuing his federal claim. *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). It is widely recognized that equitable tolling is to be applied only infrequently. *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (resort to equity is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result").

Here, Shea attributes his untimeliness to COVID-19 restrictions at his detention facility that restricted his access to the law library and institutional attorney, separated him from Tony Dane, the "jail-house attorney" inmate assisting him, and made it difficult to receive requested

---

Even assuming, *arguendo*, that Shea's writ of mandamus did toll the statute of limitations, it would not have changed the outcome. The mandamus petition was filed on September 11, 2020, or 83 days before Shea's state petition was filed on December 3, 2020. Adding 83 days to the October 4, 2021, due date would result in deadline of Monday, December 27, 2021. The federal petition was not executed until February 8, 2022.

documents. [Dkt. No. 1 at 41–42; Dkt. No. 13-1]. A number of federal courts have considered assertions that COVID-19 restrictions are "an extraordinary circumstance that provides justification for untimely habeas filings, and each have held that an individual must show that he was diligently pursuing his rights, and specifically how the pandemic prevented him from timely filing, apart from general prison policy or lockdowns." *Crook v. United States*, Case Nos. 1:21-CV-8001; 1:19-CR-296, 2022 U.S. Dist. LEXIS 32515, *18–19 (N.D. Ala. Feb. 24, 2022) (collecting cases).[9] The COVID-19 closures and restrictions Shea describes do not sufficiently explain how he was prevented from timely filing his federal petition.

First, despite the pandemic-related lockdowns and restrictions that began in March of 2020, the record establishes that Shea was able to investigate his allegations and collect the necessary information to set forth thirteen claims in his state habeas petition, which he filed in a timely manner in state court on December 3, 2020. *See* (R. at 44). Because Shea's federal petition asserts the same claims as the ones raised in his state habeas, *see supra* p. 5-7; [Dkt. No. 13-1 at 2, ¶ 12],[10] Shea had all the information he needed to file his federal petition in a timely manner well before the federal statute of limitations expired on October 4, 2021. While the Court is sympathetic to Shea's claim that he "was completely unaware of AEDPA rules," [Dkt. No. 13-2 at 2, ¶ 12], his "ignorance of the proper calculation of the period of limitation does not warrant equitable tolling." *Pearson v. North Carolina*, 130 F. Supp.2d 742, 744 (W.D.N.C. 2001); *see United States v. Sosa*,

---

[9] *See, e.g.*, *Franco v. United States*, 8:20-cv-2822, 2021 U.S. Dist. LEXIS 75997 (M.D. Fla. April 20, 2021) (finding that COVID-19 pandemic was not an extraordinary circumstance for equitable tolling where petitioner did not adequately explain why he could not file his habeas motion prior to the imposition of COVID-19 restrictions in the prison); *Powell v. United States*, CV121-023, 2021 U.S. Dist. LEXIS 114503 (S.D. Ga. May 24, 2021) (equitable tolling not appropriate where habeas petitioner failed to show diligent efforts to pursue his rights before the COVID-19 pandemic began); *cf. Dunn v. Baca*, No. 3:19-cv-702, 2020 U.S. Dist. LEXIS 86453 (D. Nev. May 18, 2020) (equitable tolling allowed where petitioner, represented by the Federal Public Defender, was diligently pursuing claim in the face of "the extraordinary circumstance of the COVID-19 pandemic").

[10] "Courts of appeals have expressly recognized the district court's duty to consider only the specific claims raised in a § 2254 petition." *Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted).

364 F.3d 507, 512 (4th Cir. 2004) (*pro se* petitioner's ignorance and misconceptions about the operation of the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond his control); *Rouse v. Lee*, 339 F.3d 238, 248–49 (4th Cir. 2003) (holding that a party's incorrect interpretation of the AEDPA statute of limitations did not present extraordinary circumstances to warrant equitable tolling); *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999) ("Ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.").

Nor do the restrictions to Shea's access to the law library or to fellow inmate Dane[11] constitute "extraordinary circumstances" justifying equitable tolling. *See, e.g.*, *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (holding that equitable tolling did not apply where access to legal materials that would have given notice of the limitations period was delayed); *Chaffer v. Prosper*, 592 F.3d 1046 (9th Cir. 2010) (noting a state inmate was not entitled to equitable tolling of limitations period for filing federal habeas corpus petition based on inmate's reliance on helpers who were transferred or too busy to attend to his petitions); *United States v. Cicero*, 214 F. 3d 199, 204–05 (D.C. Cir. 2000) (federal inmate was not entitled to equitable tolling on the ground that prisoner gave his legal papers to "jailhouse lawyer" whose placement in segregation resulted in separation of prisoner from his papers, as prisoner entrusted his papers to another at his own peril); *Posada v. Schomig*, 64 F. Supp. 2d 790, 796 (C.D. Ill. 1999) (claim that prison law clerk did not provide adequate assistance does not establish "extraordinary circumstances") *aff'd*, 234 F.3d 1273 (7th Cir. 2000) (unpublished); *Crump v. United States*, No. 12-768, 2013 U.S. Dist. LEXIS

---

[11] To the extent that Shea argues or implies that the inmate assisting him misguided or misadvised him regarding the proper calculation of the federal statute of limitations, this too is not a basis for equitable tolling. *See Henderson v. Johnson*, 1 F. Supp. 2d 650, 655 (N.D. Tex. 1998) ("[I]nmates who assist other prisoners with legal matters are not subject to the ethical and fiduciary obligations of lawyers. If their miscreant, inept, or negligent conduct were deemed sufficient of itself to toll the AEDPA limitations period, the time-bar would be rendered virtually meaningless.").

109398, at *10–11 (W.D. Mich. Aug. 5, 2013) (finding that "delayed access" to a "jailhouse lawyer" is not an "extraordinary circumstance" warranting equitable tolling); *Nogueras v. Biter*, No. 11-1006, 2012 U.S. Dist. LEXIS 13285, at *7 (E.D. Cal. Feb. 3, 2012) (similar). Indeed, the record makes clear that Shea "completed his [state] Habeas without the use of a law library," [Dkt. No. 13-1 at ¶ 9], despite being separated from fellow inmate Dane for six months before being reunited from October to December of 2020. Factually, then, there was no impediment to the timely filing of Shea's claims in state court, and Shea does not adequately explain why the alleged lack of access to his fellow inmate or the law library thereafter "specifically . . . prevented him from timely filing" his federal habeas petition. *Crook*, 2022 U.S. Dist. LEXIS 32515, *18–19.

Finally, even if the Court were to give Shea the benefit of assuming, *arguendo*, that the federal statute of limitations lapsed 48 days after what Shea *believed* to be the conclusion of his state habeas proceedings—the rehearing denial on November 24, 2021, rather than the original dismissal on August 17, 2021—Shea still fails to demonstrate how COVID-19 restrictions at the detention facility prevented him from timely filing his federal habeas petition. Theoretically, Shea's federal petition would have been due on January 14, 2022 (after accounting for federal holidays). In their respective affidavits, both Shea and Dane note that after Shea's state habeas filing was denied on November 24, 2021, they "immediately started working on his § 2254 Habeas Corpus." [Dkt. No. 13-1 at ¶ 9–10; Dkt. No. 13-2 at ¶ 19]. Moreover, Shea's federal habeas claims are nearly identical to the ones alleged in his state habeas petition, which was timely filed despite lack of access to the law library. *See* [Dkt. No. 13-1 at ¶ 11–12]. Finally, during the 48-day period following the rehearing petition denial, Shea acknowledges that he and Dane were in the same dorm and worked together on Shea's legal matters until sometime in January 2022, when Dane was moved to another dorm. *See* [Dkt. No. 13-1 at 1–2; Dkt. No. 13-2 at 2]. Despite these facts,

Shea did not file his federal petition until an additional 25 days later, on February 8, 2022. Because Shea offers no explanation for this additional delay, his circumstances do not warrant equitable tolling. In sum, the record establishes that Shea did not pursue his rights diligently and that no extraordinary circumstance prevented him from filing his federal claims in a timely manner. The petition is, therefore, time barred, and must be dismissed.

## III.   Alternative Grounds for Dismissal

In the alternative, and for the reasons below, the Court finds that Claims 1 and 13 of Shea's federal petition are procedurally defaulted and Claims 2 through 12 were reasonably adjudicated on the merits in state court. As such, all federal habeas claims are barred from consideration by this Court and must be dismissed. *See* 28 U.S.C. § 2254(b)-(d).

### A.   Exhaustion and Procedural Default of Claims 1 and 13

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *See, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002). The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

Further, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas

claim." *Id.* "A habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and clearly and expressly denied on the independent, adequate state ground of procedural default." *Bennett v. Angelone*, 92 F.3d 1336, 1343 (4th Cir. 1996) (cleaned up); *see also Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1999). A petitioner must present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). Of Shea's 13 claims, Respondent admits that Claims 2 through 12, which allege ineffective assistance of counsel, are exhausted.

In Claim 1, Shea alleges the prosecutor made false statements at sentencing, which the Supreme Court of Virginia found were defaulted pursuant the rule of *Slayton v. Parrigan*, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974) (A petition for a writ of habeas corpus "may not be used as a substitute for an appeal or writ of error."). *Slayton v. Parrigan* is an adequate and independent state law ground. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006).

Likewise, Claim 13—the allegation that Shea's sentence exceeded the guidelines—was also found to have been defaulted under the rule of *Slayton v. Parrigan.* The federal petition argues in support of Claim 13 that his counsel was ineffective for not arguing "that no unusual circumstances existed that would have increased the sentence over the state guidelines." [Dkt. No. 1 at 14]. Shea, however, did not designate this argument as a claim. *See Folkes*, 34 F.4th at 269 ("Courts of appeals have expressly recognized the district court's duty to consider only the specific claims raised in a § 2254 petition"). In any event, because he did not raise it as a claim in state

court, it is simultaneously exhausted and defaulted, which bars federal review of his claim. *See Corcoran*, 220 F.3d at 288 ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."). If Shea attempted to raise the claim in state court, the claim would be barred by the state habeas statute of limitations, Va. Code § 8.01–654(A)(2), and barred as successive under Va. Code § 8.01–654(B)(2).

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. *Harris v. Reed*, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753–54; *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990); *Clanton v. Muncy*, 845 F.2d 1238, 1241–42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

There was no external factor that prevented Shea from raising an objection to the prosecutor's argument or the sentence imposed, and there was also nothing novel about either alleged error. To the extent that Shea argues ineffective assistance of counsel as cause and prejudice to excuse the *Slayton v. Parrigan* default of Claim 1 and Claim 13, such an argument is not persuasive. "[I]neffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "'[P]rinciples of comity and federalism' require that such an ineffective-assistance claim 'be presented to the state courts as an independent claim before it

may be used [in a § 2254 proceeding] to establish cause for a procedural default.'" *Id.* at 451, 452 (citation omitted).

> ["B]ecause *Edwards* makes clear that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" that must have been presented to the state court, there is a strong reason to believe that the state court's resolution of that ineffective assistance claim is subject to the same § 2254 principles as an ineffectiveness claim presented as a separate, substantive claim for habeas relief.

*Powell v. Kelly*, 531 F. Supp. 2d 695, 724 (E.D. Va. 2008); *see also Winston v. Kelly*, 600 F. Supp. 2d. 717, 736–738 (W.D. Va. 2009), *aff'd in part*, 592 F.3d 535 (applying AEDPA deference to the state court's evaluation of ineffective assistance claim asserted as cause and prejudice to excuse procedural default).

In state habeas, Shea argued that he was denied the effective assistance of counsel because his "counsel failed to object to the Commonwealth's false statements at sentencing about the quantity of pornographic and exploitative files found on petitioner's electronic devices," "the Commonwealth's statement that petitioner ranked second in distribution of child pornography in Virginia at the time of the investigation," and that "counsel had told him about a phone call with Special Agent Cook, during which Cook informed counsel that petitioner was not actually ranked second in distribution and that the case 'wasn't as bad as we thought.'" (R. at 650–51). Shea argued that if counsel had objected and "informed the court about 'the truth' of the case, the court would have sentenced petitioner within the recommended guidelines range." (R. at 651). The Supreme Court of Virginia reasoned as follows:

> The record, including the manuscript record and the trial and sentencing transcripts, demonstrates the statement of facts contained in the written plea agreement provided that Special Agent Cook of the Virginia State Police investigated IP addresses belonging to petitioner that were involved in the exchange of child pornography using an online peer-to-peer file-sharing network. Executing a

search warrant at petitioner's home, the police seized a laptop on which petitioner admittedly accessed the file-sharing network to obtain videos and images from the internet. The police also seized an external hard drive containing at least ten files depicting "images or videos of child exploitative material" and a mobile phone containing at least two videos of such exploitative material. Had the case gone to trial, Cook would have testified petitioner "was number two in the state of Virginia for content and volume of sharing during the three [-] month investigative period." Additionally, the plea agreement, which did not contain an agreement as to petitioner's sentence, provided the Commonwealth would not be limited to these facts at sentencing.

At trial, petitioner acknowledged that he read and understood the plea agreement, discussed it with counsel, and signed it, confirming it contained the complete agreement between him and the Commonwealth on all of the charged offenses. Petitioner also acknowledged there was no agreement regarding sentencing and that he understood the range of punishment for each offense. Petitioner discussed the sentencing guidelines with counsel and understood the guidelines were not binding on the court and that he could receive up to the maximum sentence allowed, regardless of the guidelines recommendation. Petitioner's counsel also acknowledged the agreement's statement of facts constituting the evidence of the case.

At sentencing, the Commonwealth introduced evidence of petitioner's prior conviction for possession of child pornography in 2010 and the revocation of petitioner's previously suspended sentence in 2012. The Commonwealth also introduced a Virginia State Police report showing that a forensic examination of the electronic devices recovered from petitioner's home yielded numerous images and videos related to child pornography: 423 "Child Abuse Material" files and 5,372 "Child Exploitative" files on the external hard drive; 14 "Child Abuse Material" files and 3 "Child Exploitative" files on a thumb drive; 22 "Child Abuse Material" files and 112 "Child Exploitative" files on the laptop; and 22 files on the cell phone. The Commonwealth argued for an above-guidelines sentence, in part because petitioner was "such a high distributor" of child pornography. Consistent with the plea agreement's statement of facts, the Commonwealth asserted petitioner "was the number two distributor of the child pornography in the state of Virginia."

Petitioner fails to identify any basis upon which counsel reasonably could have objected to the Commonwealth's comments as being false. The Commonwealth introduced documentary evidence demonstrating the quantity of child pornography and exploitative

files found on petitioner's electronic devices, and petitioner had signed the written plea agreement and agreed that the facts of the case included the description that he was ranked second in distribution. Counsel was not ineffective for failing to make a meritless objection. *Correll v. Commonwealth*, 232 Va. 454, 469–70 (1987). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(R. at 651-52). The Supreme Court of Virginia's denial of the ineffective assistance of counsel claim related to Claim 1 was not an unreasonable application of federal law, or an unreasonable determination of facts. Accordingly, Shea has not established cause to excuse the default of Claim 1, and it must be dismissed.

With respect to Claim 13, the assertion that counsel was ineffective at sentencing is also without merit. Prior to sentencing, counsel had obtained a plea offer that resulted in a cap of eighty years out of a potential of 120 years in prison. Two of the indicted felonies had a range of between five and twenty years in prison and the remaining eight indictments carried potential ten-year sentences. The plea agreement set out in clear and unambiguous terms that Shea could be sentenced to the maximum for each of the charges to which he was going to plead guilty, which amounted to eighty years in prison, and that there was no agreement as to the sentence the Circuit Court could impose. The Circuit Court expressly went over the potential sentence with Shea in the plea colloquy and asked Shea if he understood that the "plea agreement does not have an agreement as to what [his] sentence will be," to which Shea responded, "Yes." (R. at 459). Shea also stated he understood he would receive a sentence on each indictment, that the sentence would be consecutive to one another, that there was no parole in Virginia, the state sentencing guidelines were not binding on the court, and that he could receive anywhere from the minimum to the maximum for each offense. (R. at 459–61). *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (finding that the defendant had not been prejudiced by counsel's erroneous advice regarding his sentence

because the district court provided a "careful explanation" of the severity of the sentence). The advice of the trial court alone precludes a finding of ineffective assistance of counsel.

Further, the record establishes that counsel was able to have the psychosexual evaluation revised to keep prejudicial information from being considered by the trial judge at sentencing, and counsel had no control over the fact that Shea had a prior conviction for possession of child pornography and his present convictions occurred within a short time after his release from custody. Counsel also had no way of sidestepping the fact that Shea had not been successful when placed on probation before, and that in Shea's words, "Probation was not working for [him]." (R. at 486). Despite substantial factors weighing against Shea, defense counsel constructed an argument that highlighted Shea's prior military service, corrected the assertion that he had been dishonorably discharged, noted he had received a Bronze Star and had PTSD, obtained a character reference for Shea, argued that Shea was sexually abused as a child, provided a credible (unchallenged) explanation of unintended contact with a minor, and explained that a statement the prosecutor argued demonstrated no remorse was Shea's way of understanding the impact of child pornography via the lens of his own sexual abuse. (R. at 500–06). In arguing for treatment, defense counsel noted that the prosecutor had failed to put Shea's pornography addiction in context by focusing only on child pornography when that may have been a small portion of the material on Shea's digital devices. Accordingly, Shea has not established cause to excuse the default of Claim 13, and it must be dismissed.

### B.    Standard of Review

Under AEDPA, "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"

*Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Renico v. Lett*, 559 U.S. 766, 772–73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (cleaned up); *see Richter*, 562 U.S. at 103 (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair[-]minded disagreement").

This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (cleaned up). "The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).[12] "In reviewing a habeas petition, federal courts must presume the correctness of a state

---

[12] *Pinholster* explained that

> [w]hat makes the consideration of new evidence strange is not how "different" the task would be, but rather the notion that a state court can be deemed to have unreasonably applied federal law to evidence it did not even know existed. We cannot comprehend how exactly a state court would have any control over its application of law to matters beyond its knowledge.

court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro*, 550 U.S. at 473–74. Facts found by the appellate courts on direct appeal enjoy the same presumption. *See Sumner v. Mata*, 449 U.S. 539, 548 (1981). Even when a state court does not decide the same claim presented in federal habeas corpus proceedings, "it may well decide matters relevant to one, quite possibly in the course of deciding highly similar issues of state or federal law." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010); *see Teleguz v. Pearson*, 689 F.3d 322, 332 (4th Cir. 2012) ("[T]he district court may not reject the factual findings of a state court absent clear error.") (citation omitted). Even when a district court considers a claim de novo, it must "apply § 2254(e)(1) to any factual findings made by the state court." <u>*Winston v. Kelly*, 592 F.3d 535, 553 (4th Cir. 2010).</u> "Section 2254(e)(1) plainly seeks to conserve judicial resources and reflects Congress's view that there is no reason for a do[-]over in federal court when it comes to facts already resolved by state tribunals." *Sharpe*, 593 F.3d at 379.

### (a)    Claims 2, 3, and 6

Claim 2 in the federal habeas petition alleges counsel did not provide "open and complete communication," which is supported by assertions that counsel did not meet with Shea and explain the plea agreement to him; Claim 3 alleges counsel failed to investigate because he allegedly did not understand how Shareaza, a peer-to-peer platform, works;[13] and a portion of Claim 6 alleges

---

563 U.S. at 183 n.3; *see Muhammad v. Clarke*, 2012 U.S. Dist. LEXIS 10129, *24 (E.D. Va. Jan. 26, 2012) (where a petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's finding) (citing *Kasi*, 300 F.3d at 501–02; *Pinholster*, 563 U.S. at 182–83), *appeal dismissed*, 474 F. App'x 979 (4th Cir. 2012). *Pinholster* emphasized "that the record under review is limited to the record in existence at that same time—*i.e., the record before the state court*." 563 U.S. at 182 (emphasis added).

[13] Shea's assertion that counsel did not understand how the peer-to-peer platform on his computer "works" is meritless. [Dkt. No. 1 at 10]. Shea was charged with two offenses that resulted from the officer downloading images from his computer using the Shareaza peer-to-peer program, and the remaining charges to which he pleaded guilty stemmed from images found on his digital devices. In addition, Shea admitted he understood that Shareaza allowed "other users

counsel ignored Shea's assertions that certain accusations levied against him were false and coerced Shea into signing the plea agreement. [Dkt. No. 1 at 9–11]. In state habeas, the Supreme Court of Virginia considered these three claims together because they alleged counsel was ineffective in his investigation of the case and preparation for trial. (R. at 652). The habeas court set out the following specific allegations raised in support of the claims, "Counsel did not meet with the clinical psychologist who conducted petitioner's psychosexual evaluation, review the evidence with Special Agent Cook, assess the accuracy of the statement that petitioner was ranked second in distribution of child pornography, or understand the history and treatability of petitioner's posttraumatic stress disorder." (R. at 652).

In rejecting the claims, the Supreme Court of Virginia found that Shea had not provided "a valid reason why he should not be bound by his representations at trial that his counsel's performance was adequate." (*Id.*) (citing *Anderson v. Warden*, 222 Va. 511, 516 (1981)). The habeas court found that

> [t]he record, including the trial transcript, demonstrates the trial court engaged in a thorough plea colloquy with petitioner prior to accepting his guilty pleas. During that colloquy, petitioner affirmed he discussed the charges with counsel, that he understood the elements of each offense and what the Commonwealth must prove to convict petitioner of the offenses, that he discussed with counsel any defenses to the charges, that he understood the rights he was waiving by pleading guilty, that he read and signed the plea agreement, that he discussed the plea agreement with counsel and understood each of its terms, including that there was no agreement as to the sentence to be imposed by the court upon his guilty pleas, that he was pleading guilty freely and voluntarily because he was, in fact, guilty of the charged offenses, and that was satisfied with counsel's services.

---

to use" the files on his computer and "understood how the software worked to [allow others to] obtain files." (R. at 257–58).

(R. at 652–53). The Supreme Court of Virginia's dismissal of Claims 2 and 3 and a portion of Claim 6 was not an unreasonable application of federal law or an unreasonable determination of facts, and accordingly, the claims will be dismissed.

        **(b)**      **Claims 4, 6, and 8**

Claim 4 of the federal habeas petition alleges Shea had not been informed about the plea and was coerced into accepting the plea; a portion of Claim 6 alleges counsel told Shea that he had to either sign the plea agreement or spend the rest of his life in prison; and Claim 8 alleges that counsel told Shea his sentence would fall within the state guidelines and that counsel would "shoot for the low-end." [Dkt. No 1 at 12]. In state habeas, the Supreme Court of Virginia addressed Claims 4, a portion of Claim 6, and Claim 8 together because they alleged ineffective assistance of counsel about the plea agreement. The reasoning for the state habeas court's dismissal of each claim is as follows:

> In a portion of claim (4), petitioner contends he was denied the effective assistance of counsel because counsel failed to inform petitioner the plea agreement was an "open plea," that there was "no benefit" to accepting and signing the agreement rather than proceeding to trial, and that, by pleading guilty, he had to accept all of the Commonwealth's allegations as fact, "even if they were not."
>
> The Court rejects this portion of claim (4) because petitioner failed to offer a valid reason why he should not be bound by his representation at trial that his counsel's performance was adequate and that his guilty plea was voluntary and there is no evidence identified by petitioner that would support the contrary conclusion that the plea was involuntary. [*Anderson*, 222 Va. at 516].
>
> In another portion of claim (4), a portion of claim (6), and claim (8), petitioner contends he was denied the effective assistance of counsel because counsel coerced petitioner into pleading guilty by falsely "promising" he would be sentenced within the recommended guidelines range. Petitioner alleges counsel told him he would receive "a long sentence that will equate to a death penalty" if he proceeded to trial and that "the only way" to receive a within-guidelines sentence was to accept the plea offer, despite the offer not containing any agreement as to sentencing. Petitioner contends

he would not have signed the plea agreement had he known counsel was lying.

The Court rejects these claims because petitioner fails to offer a valid reason why he should not be bound by his representations at trial that his counsel's performance was adequate, that he understood the range of punishment for each offense, that he discussed the sentencing guidelines with counsel, that he understood the guidelines were not binding on the court, that he understood he could receive up to the maximum sentence allowed for each offense, and that his guilty plea was voluntary, and there is no evidence identified by petitioner that would support the contrary conclusion that the plea was involuntary. [*Anderson*, 222 Va. at 516].

(R. at 653–54). In addition, the habeas court had already found that the record established that Shea's guilty pleas were freely and voluntarily made after a thorough plea colloquy by the trial judge. (R. at 653). The Supreme Court of Virginia's dismissal of Claims 4[14] and 8 and a portion of Claim 6 was not an unreasonable application of federal law or an unreasonable determination of facts, and accordingly the claims will be dismissed.

### (c)   Claims 5 and 6

Claim 5 and a portion of Claim 6 of Shea's federal petition alleges counsel was ineffective for not having investigated false claims from the plea agreement's statement of facts. [Dkt. No. 1 at 11]. In rejecting the claims, the Supreme Court of Virginia found that Shea had not provided "a valid reason why he should not be bound by his representations at trial that his counsel's performance was adequate." (R. at 654) (citing *Anderson*, 222 Va. at 516).

In claim (5) and a portion of claim (6), petitioner contends he was denied the effective assistance of counsel because counsel failed to request to have two "false claims" removed from the plea agreement's statement of facts, which described petitioner as ranking second in distribution of child pornography and provided that child pornographic and exploitative images and videos were

---

[14] Shea's assertion that there was no benefit to him under the plea agreement is disproved by the record. In his federal petition, the petitioner avers that he "was in fear of a life sentence," likely since he was fifty years old at that time. [Dkt. No. 1 at 12]. The plea agreement, therefore, did provide him with a substantial benefit because it provided for the dismissal of four indictments, which decreased the possible sentence Shea faced. Further, by pleading guilty, Shea not only reduced his sentencing exposure but also accepted responsibility for his actions.

found on the electronic devices seized from petitioner's home. Petitioner asserts that, before counsel presented the plea agreement, counsel had stated Special Agent Cook conceded during a phone call that "all the files on [petitioner]'s computer lacked content and [petitioner] is not number 2 in distribution." However, the erroneous facts were not removed from the agreement, and the trial court relied on these facts in imposing an above-guidelines sentence. Petitioner contends that, if the facts had been removed from the plea agreement, he "clearly" would have received a within-guidelines sentence. Further, petitioner contends that, if counsel lied and did not actually have such a phone call with Cook, then counsel lacked sufficient knowledge to negotiate a "fair" plea offer.

The Court rejects these claims because petitioner fails to offer a valid reason why he should not be bound by his representation at trial that his counsel's performance was adequate. *Id.*

(R. at 654). The Supreme Court of Virginia's dismissal of Claims 5 and a portion of Claim 6 was not an unreasonable application of federal law or an unreasonable determination of facts, and accordingly the claims will be dismissed.[15]

### (d)    Claim 7

Claim 7 of the federal petition alleges counsel was ineffective because he was not prepared for trial, did not conduct any investigations, did not understand how the Shareaza software worked, and failed to obtain an independent psychosexual evaluation after the first expert's report was

---

[15] Shea's assertion that there are false statements in the plea agreement's statement of facts were not supported by any evidence in the state proceedings, and he has introduced none in support of his federal petition. Moreover, the prosecution introduced the forensic report at the sentencing hearing on March 5, 2018, as Commonwealth's Ex. No. 3. (R. at 586–92). The forensic report supports the facts set out in the plea agreement and the prosecutor's statements during the criminal proceedings, and Shea has not produced any witness that disputes those facts. *See Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994) ("To prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial."); *see also Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (dismissing claims of ineffective assistance of counsel where petitioner failed to make a specific proffer of the testimony of the omitted witness); *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'") (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)).

"prejudicial." [Dkt. No. 1 at 12, ¶ 43]. Counsel pressured Shea to accept a plea agreement to "cover[] up" counsel's failings. [*Id.* at ¶ 44]. The Supreme Court of Virginia dismissed this claim because Shea had not provided "a valid reason why he should not be bound by his representations at trial that his counsel's performance was adequate." (R. at 654) (citing *Anderson*, 222 Va. at 516).

> In claim (7), petitioner contends he was denied the effective assistance of counsel because counsel pressured petitioner to sign the plea agreement in order to "cover up" his many failures to meet with Special Agent Cook to review the evidence, hire a forensic expert to independently examine the files recovered from petitioner's seized electronic devices, meet with petitioner, respond to petitioner's letters, and properly prepare petitioner for a psychosexual evaluation.
>
> The Court rejects claim (7) because petitioner fails to offer a valid reason why he should not be bound by his representation at trial that his counsel's performance was adequate. *Id.*

(R. at 654). The Supreme Court of Virginia's dismissal of Claim 7 was not an unreasonable application of federal law or an unreasonable determination of facts, and accordingly the claim will be dismissed.[16]

**(e)     Claim 9**

Claim 9 of the federal petition alleges that counsel was ineffective because he failed to prepare and present "a complete defense." [Dkt. No. 1 at 12]. Specifically, counsel failed to "understand the complexities of the Shareaza software," "did not provide [Shea] with an independent psychosexual evaluation, did not consult with any experts, and did not communicate with [Shea]." [*Id.*] To the extent Claim 9 duplicates allegations in Claims 2, 3, and 7, it has been addressed in the preceding sections. Any remaining allegations in Claim 9 were dismissed by the

---

[16] In addition, as with Claim 5, Shea has not provided any evidence of what an "adequate" investigation would have uncovered or how another expert's opinion and report would have been more favorable than the report prepared for sentencing. *See supra* note 15.

Supreme Court of Virginia because Shea had not provided "a valid reason why he should not be bound by his representations at trial that his counsel's performance was adequate and that his guilty plea was voluntary, and there is no evidence identified by petitioner that would support the contrary conclusion that the plea was involuntary." (R. at 655) (citing *Anderson v. Warden*, 222 Va. 511, 516 (1981)). The Supreme Court of Virginia's dismissal of Claim 9 was not an unreasonable application of federal law or an unreasonable determination of facts, and accordingly the claim will be dismissed.[17]

### (f)   Claim 10

Claim 10 asserts counsel was ineffective for not hiring an independent forensics expert to examine the digital files recovered by Agent Cook. [Dkt. No. 1 at 12–13]. The Supreme Court of Virginia dismissed this claim because Shea had not provided "a valid reason why he should not be bound by his representations at trial that his counsel's performance was adequate." (R. at 655) (citing *Anderson v. Warden*, 222 Va. 511, 516 (1981)). The Supreme Court of Virginia's dismissal of Claim 10 was not an unreasonable application of federal law or an unreasonable determination of facts, and accordingly the claim will be dismissed.[18]

---

[17] In addition, as with Claims 5 and 7, Shea has not provided any evidence of a "complete defense." *See supra* note 15. Further, the record establishes that Shea was provided with a *Miranda* warning and then admitted to exclusive use and control on the devices that were searched, and the evidence that supported each indictment was obtained from his devices. While Shea takes issue with the plea agreement's inclusion of a statement that he was ranked second in Virginia in the distribution of child pornography and as to the number of files on his devices, he does not dispute the forensic analysis that child pornography was downloaded via the peer-to-peer platform he installed on his computer, or that there were hundreds of videos and pictures of child pornography on his various devices. For example, on the Toshiba laptop, a search of that device "for images and videos of child pornography" resulted in "twenty-two (22) [files being] identified as Child Abuse Material and one hundred twelve (112) [files being] identified as Child Exploitive." (R. at 591). A similar search of his cell phone found "5 child pornographic videos located in the videos category, and 17 child pornographic images located in the pictures category." (R. at 592).

[18] In addition, as with Claims 5 and 7, Shea has not proffered how another expert's testimony or analysis would have differed from that provided to Agent Cook by the Virginia State Police, High Technology Crimes Division. (R. at 586–92). "Without a description of the subject matter of the potential testimony, [a petitioner] has not raised a cognizable claim under *Strickland* . . . [and] without a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" *Anderson*, 18 F.3d at 1221 (citation omitted).

### (g)   Claim 11

Claim 11 of the federal petition alleges trial counsel was ineffective because he "was unaware of the scope of the psychosexual evaluation," did not inform Shea of his right to remain silent, and did not hire an independent expert. [Dkt. No. 1 at 13]. The Supreme Court of Virginia denied the claim, reasoning as follows:

> In a portion of claim (11), petitioner contends he was denied the effective assistance of counsel because counsel failed to know the "scope" of petitioner's psychosexual evaluation and, therefore, failed to properly prepare petitioner for the evaluation. This resulted in a false report that was biased against petitioner. Counsel also failed to inform petitioner about his Fifth Amendment right against self-incrimination.
>
> The Court holds this portion of claim (11) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner's conclusory allegations fail to proffer what counsel could or should have done differently to better prepare petitioner for the evaluation. Additionally, the record, including the manuscript record, demonstrates petitioner consented to the Commonwealth's request for a pre-sentencing psychosexual evaluation, pursuant to Code § 19.2–300, by signing and accepting the terms of the written plea agreement. Petitioner then consented to proceed with the assessment after being informed by the evaluator of its purpose and the limits of its confidentiality. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(R. at 655–56). As with Claim 10, Shea has not shown what another expert might have opined.

*See supra* notes 15 and 18. The Supreme Court of Virginia's dismissal of Claim 11 was not an

---

*See also supra at note 15.* "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). Even without the plea colloquy, Shea has not alleged a cognizable claim of ineffective assistance of counsel. *See, e.g.*, *Evans v. Cockrell*, 285 F.3d 370, 377–78 (5th Cir. 2002) (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated).

unreasonable application of federal law or an unreasonable determination of facts, and accordingly the claim will be dismissed.

**(h)     Claim 12**

To the extent Claim 12 of the federal petition duplicates the allegation in Claim 11, it has been addressed in the preceding section; to the extent it raises a claim other than counsel should have hired an independent expert, it has no merit. The Supreme Court of Virginia dismissed this claim because Shea had not established a claim of ineffective assistance of counsel under either prong of *Strickland*. (R. at 656):

> In claim (12), petitioner contends he was denied the effective assistance of counsel because counsel failed to obtain an independent psychosexual evaluation prior to sentencing. Petitioner asserts counsel was aware the evaluation that was conducted was "bias[ed]" and "glossed over" petitioner's posttraumatic stress disorder and childhood sexual experiences. Further, petitioner "can only speculate how much shorter the sentence would have been" if counsel had presented an independent report to the court.

> The Court holds claim (12) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner's conclusory claim fails to demonstrate how the psychosexual evaluation was biased against petitioner and fails to proffer how a second evaluation would have yielded different results. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(R. at 656). As with other claims, Shea has not shown what a different expert might have opined. *See supra* notes 15 and 18. The Supreme Court of Virginia's dismissal of Claim 11 was not an unreasonable application of federal law or an unreasonable determination of facts, and accordingly the claims will be dismissed.

## IV.   Conclusion

For the foregoing reasons, the motion to dismiss the petition [Dkt. Nos. 8, 15] must be granted and the petition is dismissed with prejudice. An appropriate Order shall issue.[19]

/s/
Michael S. Nachmanoff
United States District Judge

February 10, 2023
Alexandria, Virginia

---

[19] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.